UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
—————

JON THOMAS FOX,

                    Petitioner,                          Case No. 1:22-cv-473

v.                                                       Honorable Paul L. Maloney

MIKE BROWN,

                    Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.
Petitioner Jon Thomas Fox is incarcerated with the Michigan Department of Corrections at the
Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. On April 13,
2018, following a four-day jury trial in the Calhoun County Circuit Court, Petitioner was convicted
of assault by strangulation, in violation of Mich. Comp. Laws § 750.84(1)(b), unlawful
imprisonment, in violation of Mich. Comp. Laws § 750.349b, and two counts of first-degree
criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b.[1] On May 25,
2018, the court sentenced Petitioner to concurrent prison terms of 5 years, 7 months to 10 years
for assault, 8 years, 4 months to 15 years for unlawful imprisonment, and 23 years, 9 months to 71
years, 3 months for CSC-I.

On May 27, 2022, Petitioner, represented by counsel, filed his habeas corpus petition
raising three grounds for relief, as follows:

---

[1] Petitioner was also convicted of interfering with electronic communications, but he completed
and was discharged from that sentence before filing his habeas petition.

I.      Defense counsel was ineffective for failing to advise Mr. Fox of the consequences of rejecting a plea offer to one-year incarceration. Mr. Fox was convicted at trial, and was sentenced to 285 months of incarceration. The case must be remanded due to counsel's ineffectiveness for re-offer of the plea agreement.

II.     The trial court erred when it admitted the recording of the complainant's 911 call because the call was not a present sense impression or an excited utterance. Defense counsel was ineffective for failing to object to its admission requiring reversal and a new trial.

III.    The prosecutor committed misconduct by making statements that were not supported by or [were] contradicted [by] facts in evidence. Mr. Fox's right to due process was violated . . . requiring reversal and a new trial.

(Pet., ECF No. 1, PageID.6–9.) Respondent contends that Petitioner's grounds for relief are meritless.[2] (ECF No. 5.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

## I.     Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

---

[2] Respondent also contends that grounds II and III are procedurally defaulted. (ECF No. 5, PageID.365–366.) Respondent does recognize, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claims.

[Petitioner] and the victim had an extremely tumultuous relationship that lasted several years. On the night in question, [Petitioner] waited for the victim inside her home. When she entered, [Petitioner] grabbed her and attempted to tie her hands around her back. [Petitioner] escorted the victim to the bathroom to allow her to vomit and then proceeded to bring her to the bedroom. [Petitioner] took the victim's cell phone to prevent her from calling 911. The victim was able to free her hands, but [Petitioner] grabbed her by her throat and threw her to the ground. [Petitioner] digitally penetrated the victim while she laid on the ground. Soon thereafter, [Petitioner] inserted his penis into her vagina. The victim testified that this encounter was nonconsensual. Later that same day, the victim contacted [Petitioner] to discuss what transpired. She testified that she did not want to involve police because she wanted to keep her family together. Dissatisfied with the discussion with [Petitioner], the victim contacted police a few hours later. During the phone call, the victim made statements about [Petitioner] stealing a motorcycle and how [Petitioner] raped her. This 911 call was admitted into evidence without objection.

*People v. Fox*, No. 344159, 2020 WL 25011687, at *1 (Mich. Ct. App. May 14, 2020).

Jury selection for Petitioner's trial began on April 10, 2018. (Trial Tr. I, ECF No. 6-3.) Over the course of the next two days, the jury heard testimony from the victim, an emergency medicine doctor, law enforcement officers, a social worker, a sexual assault nurse examiner, and Petitioner himself. (Trial Tr. II & III, ECF Nos. 6-4 and 6-5.) On April 13, 2018, the jury reached a guilty verdict. (Trial Tr. IV, ECF No. 6-6.) Petitioner appeared before the trial court for sentencing on May 25, 2018. (ECF No. 6-7.)

Petitioner, with the assistance of appellate counsel, appealed his conviction and sentence to the Michigan Court of Appeals, raising the three grounds for relief set forth above. (ECF No. 6-9, PageID.1266.) Petitioner also filed a motion to remand the matter to the trial court to hold an evidentiary hearing pursuant to *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), regarding Petitioner's claims of ineffective assistance of counsel. (*Id.*, PageID.1219–1243.) The court of appeals granted Petitioner's motion in an order entered on February 8, 2019. (*Id.*, PageID.1218.)

The trial court conducted an evidentiary hearing on June 10, 2019. (ECF No. 6-8.) At the hearing, trial counsel James Goulooze, Petitioner's mother, Petitioner himself, and a Calhoun

3

County prosecutor testified. (*Id.*) At the end of the hearing, the trial court orally concluded that Petitioner had not demonstrated that trial counsel rendered ineffective assistance. (*Id.*, PageID.1187–1194.) Subsequently, on May 14, 2020, the court of appeals affirmed Petitioner's convictions and sentence. *Fox*, 2020 WL 2501687, at *1. On March 2, 2021, the Michigan Supreme Court denied Petitioner's application for leave to appeal. *See People v. Fox*, 954 N.W.2d 821 (Mich. 2021). This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000);

*Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III. Discussion

### A. Ground II—Trial Court Error Regarding Admission of 911 Call

#### 1. The State Law Error in the Admission of the 911 Call is Not Cognizable on Habeas Review

As his second ground for relief, Petitioner contends that the trial court erred by admitting the recording of the victim's 911 call "because the call was not a present sense impression or

excited utterance." (Pet., ECF No. 1, PageID.7.) Petitioner also argues that counsel was ineffective for failing to object to the admission of the call. (*Id.*)

On direct appeal, the court of appeals agreed with Petitioner that the recording of the 911 call should not have been admitted, but that the admission did not "amount to plain error because the admission of the statements was not outcome-determinative: there was other evidence that corroborated [Petitioner's] guilt." *Fox*, 2020 WL 2501687, at *4. The court of appeals concluded that the recording did not constitute a present sense impression because the victim made the 911 call the day after the assault and after she had had a conversation with Petitioner about what happened. *Id.* The recording also did not constitute an excited utterance because there was no "'overwhelming influence' that lasted between [the victim] waking up and her disclosure of the assault to police." *Id.* Nevertheless, the admission did not amount to plain error because the "jury still heard testimony from the victim about the assault and what transpired after the assault." *Id.*

State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The decision of the state courts on a state law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. The claim that the trial court erred as a matter of state evidentiary law, therefore, does not warrant habeas relief.

2.      **Petitioner Did Not Raise a Due Process Claim Relating to the Admission of the 911 Call Recording on Direct Appeal**

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275–77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365–66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Fair presentation has a substantive component and a procedural component. With regard to substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern. *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993); *see also Picard*, 404 U.S. at 277–78.

In Petitioner's court of appeals brief, he stated the question presented regarding the admission of the 911 call recording as follows:

> Did the trial court err when it admitted the recording of the complainant's 911 call because the call was not a present sense impression or an excited utterance? Was defense counsel ineffective for failing to object to its admission? US Const, Ams VI, XIV; Const 1963, Art 1, § 20.

8

(Pet'r's Appeal Br., ECF No. 6-9, PageID.1271.) Petitioner made no mention of "due process" in his statement of the issue or in his appellate brief. (*Id*., PageID.1271, 1287–1296.)[3] Moreover, Petitioner did not cite any federal decisions at all.

> As set forth in *Franklin v. Rose*, 811 F.2d 322 (6th Cir. 1987),
>
> To fairly present his constitutional argument to the state courts required more than the use of a generalized catch-all phrase which merely alleged the deprivation of a fair trial under the United States Constitution. Such a catch-all provision does not adequately apprise the state courts of the constitutional theory to be relied upon at appellate review, especially under circumstances where the only legal theory presented to the state courts was predicated entirely upon state evidentiary law.

*Id.* at 326. "General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights are violated. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). And Petitioner did not offer even those inadequate identifiers to the Michigan Court of Appeals. Plainly, Petitioner has not exhausted any "due process" claim relating to admission of the 911 call recording.

The Court may not grant habeas relief on a claim if Petitioner has not exhausted his state court remedies. *See* 28 U.S.C. § 2254(b)(1)(A). A habeas corpus petition, however, "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the

---

[3] In Petitioner's *pro per* application for leave to appeal to the Michigan Supreme Court, he makes passing reference to the "fairness" and "integrity" of the proceedings, but he does not mention due process. (Pet'r's Appl. for Leave to Appeal, ECF No. 6-11, PageID.2372, 2373.) Petitioner identifies the Fourteenth Amendment as support for his claim, but the only federal constitutional analysis offered relates to the effective assistance of counsel, guaranteed by the Sixth Amendment. That amendment is applicable to the states through the Fourteenth Amendment. *See, e.g.*, *Lafler v. Cooper*, 566 U.S. 156, 160 (2012) (stating "[t]he instant case comes to the Court with the concession that counsel's advice with respect to the plea offer fell below the standard of adequate assistance of counsel guaranteed by the Sixth Amendment, applicable to the States through the Fourteenth Amendment") In the context of Petitioner's appellate argument, therefore, the reference to the Fourteenth Amendment, without more, would certainly not be enough to tip of the appellate court that Petitioner intended to raise a "due process" claim.

courts of the State." 28 U.S.C. § 2254(b)(2). Accordingly, the Court will address the "due process"
implications of admission of the 911 call recording.

### 3.      Admission of the 911 Call Recording did not Violate Due Process

This Court is bound by the Michigan Court of Appeals' determination that the admission
of the 911 call recording violated the Michigan Rules of Evidence regarding hearsay. But the
improper admission of evidence does not necessarily entitle a petitioner to habeas relief. State
court evidentiary rulings "cannot rise to the level of due process violations unless they offend[ ]
some principle of justice so rooted in the traditions and conscience of our people as to be ranked
as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks
omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329
F.3d 496, 512 (6th Cir. 2003). A federal court may only grant relief if Petitioner is able to show
that the state court is in conflict with a decision reached by the Supreme Court on a question of
law, or if the state court decided the evidentiary issue differently than the Supreme Court did on a
set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000);
*see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief
based on an allegedly improper evidentiary ruling, a petitioner must identify "'a Supreme Court
case establishing a due process right with regard to the specific kind of evidence' at issue").

Petitioner cannot make that showing because even though the recording of the 911 tape
was inadmissible hearsay under state law, there is nothing inherent in the admission of hearsay
testimony generally that offends fundamental principles of justice. In fact,

> [t]he first and most conspicuous failing in [arguing that hearsay testimony violates
> due process] is the absence of a Supreme Court holding granting relief on [that]
> theory: that admission of allegedly unreliable hearsay testimony violates the Due
> Process Clause. That by itself makes it difficult to conclude that the state court of
> appeals' decision "was contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the Supreme Court of the United
> States."

*Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013) (quoting 28 U.S.C. § 2254(d)). Petitioner, therefore, cannot demonstrate that the court of appeals' rejection of his claim regarding the admission of hearsay is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief with respect to this portion of habeas ground II.

The Court addresses Petitioner's claim that counsel was ineffective for failing to challenge the admission of the recording *infra*.

### B.     Grounds I and II—Ineffective Assistance of Counsel

As his first ground for relief, Petitioner contends that counsel was ineffective for "failing to advise [him] of the consequences of rejecting a plea offer to one-year of incarceration." (Pet., ECF No. 1, PageID.6.) Furthermore, as part of habeas ground II, Petitioner faults counsel for not objecting to the admission of the 911 call discussed *supra*. (*Id.*, PageID.7.)

#### 1.     Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as

11

they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d), analysis of counsel's performance. In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

Petitioner raised his ineffective assistance claims on direct appeal, and the court of appeals addressed them under the following standard:

> In order to receive a new trial on the basis of ineffective assistance of counsel, defendant "must show both that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Smith v. Spisak*, 558 U.S. 139, 149; 130 S. Ct. 676; 175 L. Ed. 2d 595 (2010) (quotation marks and citation omitted); *People v. Trakhtenberg*, 493 Mich. 38, 51; 826 N.W.2d 136 (2012). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily

12

bears the burden of establishing the factual predicate for his claim." *People v. Carbin*, 463 Mich. 590, 600; 623 N.W.2d 884 (2001).

*Fox*, 2020 WL 2501687, at *4. In *Smith*, the Supreme Court identified *Strickland* as the source of the standard. *See Smith*, 558 U.S. at 149. Moreover, the cases cited by the Michigan Supreme Court in *Trackhtenberg* identify *Strickland* as the source of the standard. *See People v. Pickens*, 521 N.W.2d 797 (Mich. 1994). Thus, there is no question that the court of appeals applied the correct standard.

The court of appeals' application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

13

*Id.* at 406. Therefore, because the court of appeals applied the correct standard Petitioner can only overcome the deference afforded state court decisions if the determination regarding Petitioner's ineffective assistance claims is an unreasonable application of *Strickland* or if the state court's resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d). The Court, therefore, will consider whether the court of appeals reasonably applied the standard for Petitioner's claims of ineffective assistance of counsel.

### 2.     Ground I—Ineffective Assistance During Plea Negotiations

As his first ground for relief, Petitioner contends that trial counsel was ineffective "for failing to advise [him] of the consequences of rejecting a plea offer to one-year of incarceration." (Pet., ECF No. 1, PageID.6.)

A criminal defendant is entitled to effective assistance of counsel during plea negotiations. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The same two-part *Strickland* inquiry applies to ineffective assistance of counsel claims regarding the plea negotiation process. *See id.* Often, habeas petitioners challenge the assistance of counsel for advising acceptance of a plea offer. Then, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court described the appropriate prejudice analysis where counsel advises rejection of a plea offer:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164. Moreover, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *See Missouri v. Frye*, 566 U.S. 134, 147–49 (2012).

During the *Ginther* hearing, trial counsel James Goulooze testified that during a pretrial conference, the prosecution offered Petitioner a verbal plea offer "to dismiss the CSC, the capital CSC charges." (ECF No. 6-8, PageID.1128.) Goulooze recalled that the offer involved Petitioner pleading to "some remaining felonies" and receiving "a guidelines type of sentencing." (*Id.*) Goulooze also testified that if the CSC charges were dropped, Petitioner would not have register as a sex offender. (*Id.*)

Goulooze testified that he turned the offer down on Petitioner's behalf during the conference, and that he discussed the offer with Petitioner afterwards. (*Id.*, PageID.1129.) Goulooze clarified that the offer "wasn't closed or anything final" despite his initial rejection of the offer. (*Id.*) Goulooze testified that Petitioner "was of a mindset that he was going to be acquitted and absolved of this." (*Id.*, PageID.1130.) Goulooze admitted, however, that he had not discussed the consequences of rejecting the plea with Petitioner. (*Id.*, PageID.1130–1131.)

Goulooze testified that he subsequently met with Petitioner and Petitioner's mother to prepare for trial. (*Id.*, PageID.1133.) They did not "seriously consider[]" the plea offer during those meetings because "it just wasn't being considered." (*Id.*) On cross-examination, Goulooze reiterated that Petitioner was "adamant that he was innocent." (*Id.*, PageID.1139.) He noted that Petitioner "was not going to consider a plea bargain at any point and he was unequivocal about that through time." (*Id.*, PageID.1141.)

Petitioner's mother Patricia Halder also testified at the *Ginther* hearing. She noted that she was present at several meetings between Petitioner and Goulooze. (*Id.*, PageID.1147.) She was

present for "several trips here to the Court for offers that were made." (*Id.*) Halder recalled an offer

for Petitioner to plead guilty and receive a sentence of 10-20 years, and that offer was rejected.

(*Id.*, PageID.1148.) Halder also recalled an offer made "shortly before the trial and it was

something one to five maybe and they would drop two of the charges if he pleaded guilty to a

couple of the other charges." (*Id.*) Halder noted that:

> the offers kept decreasing in number that we felt like after three years and the fact
> that we were going down to this small amount of years that maybe they would either
> drop the case or they didn't really have enough to fully convict [Petitioner] so they
> thought maybe [Petitioner] would take this offer.

(*Id.*)

On cross-examination, however, Halder admitted that Petitioner maintained his innocence

"from day one." (*Id.*, PageID.1150.) She stated that right before trial, Petitioner "said I'm not going

to plead guilty to something I didn't do." (*Id.*) Petitioner did not want to take the offer, so they

(Petitioner, his mother, and Goulooze) agreed that they "would see what happened," and they

ended up at trial because another offer was not made. (*Id.*) On re-cross examination, Halder

reiterated that Petitioner maintained his innocence "all the way through" and that it was "his

intention to fight this because he was innocent." (*Id.*, PageID.1153.) She testified that despite the

offer of one to five years, Petitioner "still chose to continue to trial because he maintained his

innocence." (*Id.*, PageID.1155.)

Petitioner himself also testified at the *Ginther* hearing. He testified that he did not have "a

lot of discussion" regarding plea offers with Goulooze. (*Id.*, PageID.1159.) Petitioner admitted

that he consistently rejected all offers. (*Id.*) Petitioner testified that the final offer was "to drop the

two CSC charges if [Petitioner] pled guilty to the other three felonies" and that he would "do a

year in the county." (*Id.*) Petitioner stated that he rejected that offer because "it was hard for [him]

to take a plea deal on something that [he did not] do." (*Id.*, PageID.1160.) He testified that after

16

rejecting that offer, Goulooze "kind of reassured [his] feelings on it that they didn't have a very strong case." (*Id.*) Petitioner noted that Goulooze never told him that he "could be facing twenty-three to twenty-five years" if he went to trial, and that he never told him that CSC-I offenses can carry up to life imprisonment. (*Id.*, PageID.1161.) Petitioner admitted, however, that he was advised of the maximum penalties for his charges at his arraignment, but that he "wasn't listening" because he was "so far lost" after hearing the bond amount. (*Id.*, PageID.1165.) He also admitted that he chose not to go over all of the paperwork with counsel. (*Id.*, PageID.1165–1166.) Petitioner stated that he turned down the plea offers because "first [he] was innocent and second, [he did not] understand how many years that charge carried if [he] went to trial and lost." (*Id.*, PageID.1166.) He stated that had he known the penalties, he would have taken the plea offer even if he were innocent. (*Id.*)

Calhoun County prosecutor Karen Kelley also testified at the hearing. She was not the prosecutor who handled Petitioner's trial, but she was involved in some status conferences. (*Id.*, PageID.1170.) Kelley testified that she was aware that prosecutor Karen Pawloski had, at one point, "made an offer of dismissing the two CSCs with no sentence agreement." (*Id.*, PageID.1171.)

Petitioner raised his ineffective assistance claim on direct appeal, and the court of appeals rejected it, stating:

> In this case, defense counsel admitted during the evidentiary hearing that he did not inform [Petitioner] of his minimum sentencing guidelines range. "The decision to plead guilty is the defendant's," and defense counsel must provide sufficient enough advice during plea negotiations to allow defendant "to make an informed and voluntary choice between trial and a guilty plea." *People v. Corteway*, 212 Mich. App. 442, 446; 538 N.W.2d 60 (1995). Because defense counsel did not advise [Petitioner] of his minimum sentencing guidelines range, [Petitioner] was unable to make an informed and voluntary choice between trial and the alleged one year of incarceration.

17

However, [Petitioner] cannot establish prejudice. We note that [Petitioner's] offer of proof by way of an affidavit from defense counsel raises the question whether defendant was ever offered one year of incarceration. First, at the evidentiary hearing, there was testimony that [Petitioner] was never offered such a plea. Second, and more curiously, defense counsel's affidavit has the language "one year in custody" stricken and handwritten above "a sentence of" the word "guideline." This suggests that [Petitioner] was offered a guideline sentence instead of one year of incarceration.

Notwithstanding, there is not a reasonable probability that [Petitioner] would have accepted the plea, whether the plea offer was for one year of incarceration or not. Throughout the entire trial and even at the evidentiary hearing, [Petitioner] adamantly maintained his innocence. Even during the evidentiary hearing, [Petitioner] testified that he "couldn't bring [him]self to plead guilty to something that [he] didn't do." The trial court determined that, because of defense counsel's and [Petitioner's] and his mother's testimonies about rejecting any plea offer because of [Petitioner's] innocence, there was not a reasonable probability that [Petitioner] would have accepted the plea without the clarifying effects of hindsight. Similar to *Douglas*, we can find no clear error in the trial court's determination.

*Fox*, 2020 WL 2501687, at *2.

Petitioner offers no evidence, much less clear and convincing evidence, to overcome the presumption afforded to the court of appeals' factual determination that Petitioner would not have accepted the plea. As set forth above, Goulooze, Petitioner's mother, and Petitioner himself testified at the evidentiary hearing that Petitioner maintained his innocence from the beginning of criminal proceedings. Petitioner himself testified that he could not bring himself to plead guilty to something that he had not done. Although Petitioner did indicate at the hearing that he would have accepted the last offer despite his innocence if he had known of the potential penalties he faced by going to trial, the record reflects that Petitioner was notified about the potential penalties at his arraignment. Moreover, Petitioner only once mentioned that he would have taken the offer during the *Ginther* hearing; at all other times during his testimony he adamantly asserted his innocence. Given the overwhelming testimony—including Petitioner's own testimony—that Petitioner steadfastly maintained his innocence, the court of appeals reasonably determined that Petitioner

had not demonstrated a "reasonable probability [that he] would have accepted the earlier plea

offer." *Frye*, 566 U.S. at 147–49 (2012).

In sum, Petitioner has not demonstrated that the court of appeals' rejection of this claim of

ineffective assistance of trial counsel is contrary to, or an unreasonable application of, *Strickland*

and *Frye*. Petitioner, therefore, is not entitled to relief with respect to habeas ground I.

### 3.      Ground II—Failure to Object to Admission of 911 Call

As part of habeas ground II, Petitioner contends that trial counsel was ineffective for failing

to object to the admission of the 911 call. (Pet., ECF No. 1, PageID.7.) Petitioner alleges that at

the *Ginther* hearing, counsel testified "that he assumed that the 911 recording was going to be

admitted and, given that assumption, that he tried to find a way to use the recording for his client's

benefit." (ECF No. 1-5, PageID.126.) Petitioner faults counsel for not researching the admissibility

of the call. (*Id.*) Petitioner avers that "to the extent the 911 call had anything of value to the defense,

trial counsel could very well have cross-examined the complainant on the topic without the

admission of the damaging 911 phone call." (*Id.*)

At the *Ginther* hearing, trial counsel admitted that he did not consider whether admission

of the 911 call would cause any evidentiary issues. (ECF No. 6-8, PageID.1143.) Counsel noted

that in his experience, 911 calls are almost always admitted. (*Id.*) Counsel testified that he thought

the 911 call "indicated [that the victim] just wanted to strike back at [Petitioner]." (*Id.*,

PageID.1144.) Counsel thought that the call would be useful to the defense to show that the victim

wanted to "get" Petitioner. (*Id.*, PageID.1144–1145.)

On direct appeal, the court of appeals rejected Petitioner's ineffective assistance claim,

stating:

> With regard to [Petitioner's] ineffective assistance of counsel claim relating to the
> statements, we hold that counsel was not ineffective. Defense counsel is afforded
> wide latitude on matters of trial strategy, and this Court will not substitute its

judgment for that of defense counsel, review the record with the added benefit of hindsight on such matters, or second-guess defense counsel's judgment on matters of trial strategy. See *People v. Unger*, 278 Mich. App. 210, 242–243; 749 N.W.2d 272 (2008). The record demonstrates that defense counsel refrained from objecting to the admission of the 911 call because of trial strategy. Specifically, defense counsel stated that he believed the call indicated that the victim was just trying to "strike back" at [Petitioner] and that, because [Petitioner] did not give the victim what she wanted by way of remaining at the house, she decided to call 911. Defense counsel believed that the discussion about the motorcycle at the beginning of the call would negatively affect the victim's credibility. We are not left with a definite and firm conviction that the trial court erred in determining that defense counsel was not ineffective. See *Head*, 323 Mich. App. at 539.

*Fox*, 2020 WL 2501687, at *5.

In his § 2254 petition, Petitioner faults the court of appeals for failing to "correctly apply federal law on claims of ineffective assistance of counsel, where trial counsel failed to make an informed choice about whether to object to the admissibility of the 911 [call] because he assumed the call would be admitted." (ECF No. 1-5, PageID.126.) Petitioner argues that "[i]t can never be reasonable trial strategy to fail to object to inadmissible evidence because trial counsel assumed the evidence was admissible." (ECF No. 11, PageID.2466.)

The Court recognizes that there are instances where counsel's failure to object to clearly inadmissible evidence does not amount to strategy. *See, e.g.*, *Coleman v. Ohio Adult Parole Auth.*, 118 F. App'x 949, 952 (6th Cir. 2004) ("The state's argument that counsel's failure to object to the remarks as part of a conscious strategy to use the prior conviction in [the defendant's] favor does little to rebut the district court's finding of ineffective assistance, and is supported by no case."); *Lovett v. Foltz*, No. 88-1682, 1989 WL 101522, at *4 (6th Cir. Sept. 5, 1989) (noting that "while 'baring the soul' may have been a reasonable defense theory, its use . . . does not excuse counsel's failure to object to what might otherwise have been inadmissible evidence"). Here, however, Petitioner has not presented any evidence, much less clear and convincing evidence, to rebut the court of appeals' factual determination that trial counsel did not object to the admission

20

of the 911 call for strategic purposes. Given that the victim made the 911 call the day after the assault, counsel chose to use admission of the 911 call in an attempt to show that the victim was trying to "strike back" at Petitioner out of anger. Notably, on cross-examination, trial counsel had the victim reiterate that she made the 911 call only after she had talked to Petitioner about the incident and after he had declined her proposal to return to the home and "start all over" to "[h]ave [her] family." (Trial Tr. II, ECF No. 6-4, PageID.742–743.) The fact that counsel's strategy was ultimately unsuccessful does not automatically render counsel's pursuit of that strategy professionally unreasonable. Thus, Petitioner has failed to demonstrate that the court of appeals' determination regarding the reasonableness of counsel's decision to not object to the admission of the 911 call recording was an unreasonable application of *Strickland*.

Petitioner also argues that the court of appeals "did not apply the correct 'prejudice' standard on this claim of ineffective assistance of counsel." (ECF No. 1-5, PageID.126.) Petitioner avers that the court of appeals "considered the effect of the admission of the 911 call under a plain error analysis, rather than the constitutional standard of 'prejudice' for the harm resulting form ineffective assistance of counsel." (ECF No. 11, PageID.2466.) As set forth *supra*, the court of appeals concluded that the admission of the 911 call "did not amount to plain error because the admission of the statements was not outcome-determinative: there was other evidence that corroborated [Petitioner's] guilt." *Fox*, 2020 WL 2501687, at *4.

Under Michigan harmless error jurisprudence, unpreserved nonstructural constitutional error is reviewed under a plain error standard. *People v. Cornell*, 646 N.W.2d 127, 142–43 (Mich. 2002); *People v. Carines*, 597 N.W.2d 130, 143 (Mich. 1999). To prevail, the defendant must show "a plain error that affected substantial rights." *Carines*, 597 N.W.2d at 143. The Michigan Supreme Court assesses whether the error affected the outcome of the proceeding to determine whether the

defendant has made the necessary showing. *People v. Davis*, 983 N.W.2d 325, 336–337 (Mich. 2022) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). That is "the same kind of inquiry" the Michigan courts use to determine whether error is harmless: was it "outcome-determinative." *Id.* The Michigan Supreme Court equates "outcome determination" to "prejudice" when separating plain from harmless error, *People v. Vaughn*, 821 N.W.2d 288, 303 (Mich. 2012), and when evaluating the *Strickland* standard for ineffective assistance of counsel, *People v. Harris*, 840 N.W.2d 307, 308 (Mich. 2013).

The impact of an error on the outcome of the proceedings is also the focus of federal harmless error analysis. *See, e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (adopting as the standard for determining whether habeas relief if appropriate "whether the . . . error 'had substantial and injurious effect or influence in determining the jury's verdict.'"); *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (posing the question as "Do I, the judge, think that the error substantially influenced the jury's decision?"); *Brown v. Davenport*, 596 U.S. 118, 126 (2022) (stating that "a state prisoner . . . must show that the error had a 'substantial and injurious effect or influence' on the outcome of his trial" (quoting *Brecht*, 507 U.S. at 637)). The appellate court's decision that the error was not outcome determinative is the equivalent of a determination that the error was harmless under *Brecht*. *Kyles v. Whitley*, 514 U.S. 419, 435–36 (1995). The determination that any error was harmless under *Brecht* necessarily means that it is not prejudicial under *Strickland*. *See Kyles*, 514 U.S. at 436 (explaining that the *United States v. Agurs*, 427 U.S. 97 (1976), materiality standard, later adopted as the prejudice standard for ineffective assistance of counsel claims, requires the habeas petitioner to make a greater showing of harm than is necessary to overcome the harmless error test of *Brecht*); *see also Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016) ("[O]ur previous analysis of *Strickland* prejudice applies to the assessment

22

of whether the Confrontation Clause violation was harmless error under *Brecht*."); *Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004) ("Because we find the error to be harmless [under *Brecht*] Bell cannot meet the prejudice requirement of *Strickland*. . . ."); *Kelly v. McKee*, No. 16-1572, 2017 WL 2831019 at *8 (6th Cir. Jan. 24, 2017) ("Because Kelly suffered harmless error [under *Brecht*] at best, he cannot establish that he suffered prejudice [under *Strickland*].").

*Brown* states that "a state court's harmless-error determination qualifies as an adjudication on the merits under AEDPA." 596 U.S. at 127. Accordingly, the Court must defer to that adjudication under § 2254(d)(1) unless the "petitioner persuades [the Court] that no 'fairminded juris[t]' could reach the state court's conclusion under [the Supreme] Court's precedents." *Id*. at 1525 (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)). This is a standard that is intentionally difficult to meet. *See Woods*, 575 U.S. at 316.

Petitioner argues only that he was "certainly prejudiced by the admission where the 911 call was inflammatory and unfairly repeated the complainant's version of events." (ECF No. 11, PageID.2466.) He provides no argument suggesting that no fairminded jurist could come to the conclusion reached by the court of appeals under Supreme Court precedent. Notably, Petitioner acknowledges that the 911 call repeated the victim's version of events. Thus, even though the call "was improperly before the jury," it was "cumulative of other evidence and did not pose a reasonable possibility of prejudice to the jury's verdict." *United States v. Lartigue*, Nos. 93-5356, 93-5369, 1994 WL 151337, at *11 (6th Cir. Apr. 26, 1994). Petitioner simply fails to demonstrate that the admission of the 911 call had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 637, particularly in light of the victim's testimony concerning the assault, as well as testimony by medical providers concerning the bruises the victim suffered.

23

Given Petitioner's failure to persuade the Court that no fairminded jurist could reach the conclusion arrived at by the court of appeals, the Court will defer to the court of appeals' plain error determination. The Court's deference to the court of appeals' determination that any error was not outcome determinative necessarily leads a conclusion that Petitioner cannot establish prejudice under *Strickland* for counsel's failure to object to the admission of the 911 call. Petitioner, therefore, has failed to demonstrate that the court of appeals' rejection of this ineffective assistance claim is an unreasonable application of *Strickland*, whether considered under the first or second *Strickland* prong. Accordingly, Petitioner is not entitled to relief with respect to this aspect of habeas ground II.

### C.      Ground III—Prosecutorial Misconduct

As his third and final ground for relief, Petitioner contends that the prosecution "committed misconduct by making statements that were not supported by or contradicted facts in evidence," thereby violating Petitioner's due process rights. (Pet., ECF No. 1, PageID.9.) Petitioner takes issue with two sets of statements made by the prosecutor during opening statements and closing arguments: (1) statements referring to the victim as being "tied up" and (2) statements that Petitioner could not "get hard" on the date of the incident. (ECF No. 1-5, PageID.126–127.)

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–

24

12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. 637, 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (internal quotation marks omitted).

### 1. Statements Regarding the Victim Being "Tied Up"

Petitioner first takes issue with statements the prosecutor made during opening statements and closing arguments regarding the victim being "tied up." During opening statements, the prosecutor stated that Petitioner "immediately put[] his hand over [the victim's] mouth, tie[d] her hands behind her back." (Trial Tr. II, ECF No. 6-4, PageID.678.) The prosecutor noted that when Petitioner took the victim into the living room, the victim was "still tied up. She's tied up with a scarf. She's actually able to get her own hands untied." (*Id.*) The prosecutor also referenced the victim being tied up when referring to the charge of unlawful imprisonment. (*Id.*, PageID.681.) During closing arguments, the prosecutor referenced Petitioner's testimony that the victim was no

longer tied up, as well as testimony that the victim was able to "get her hands away." (Trial Tr. III, ECF No. 6-5, PageID.1049.)

During trial, the victim testified that when she arrived home, Petitioner grabbed hold of her. (Trial Tr. II, ECF No. 6-4, PageID.701.) She testified that Petitioner "tri[ed] to take [her] hands and tie them up behind [her] back." (*Id.*) The victim also testified that when Petitioner took her out of the bathroom, she "tried to get away, and so [she] struggled and got [her] hands loose." (*Id.*, PageID.705.) During examination by the trial court, the victim reiterated that Petitioner tied her hands up almost immediately after she entered the house. (*Id.*, PageID.772.)

Petitioner himself testified that when the victim came home, he "started to tie her hands up." (Trial Tr. III, ECF No. 6-5, PageID.977.) He testified, however, that he did not tie her hands up because she "said she felt like she was going to be sick." (*Id.*) Later on, though, Petitioner noted that only one of the victim's wrists was tied. (*Id.*, PageID.1000.) He also admitted to tying her up during cross-examination. (*Id.*, PageID.1012.)

The court of appeals rejected this portion of Petitioner's prosecutorial misconduct claim, stating:

> With regard to the prosecutor's statements about the victim being tied up, [Petitioner] asserts that there was no evidence to support such statements. On the contrary, there was ample evidence by way of testimony from both the victim and [Petitioner] about [Petitioner] attempting to tie the victim's hands during the assault. Although later testimony revealed that the victim was not fully tied and eventually released herself from her constraints, there was evidence of which the prosecutor could reasonably infer that the victim's hands were tied. See *Dobek*, 274 Mich. App. at 66. Therefore, [Petitioner's] reliance on the overall fact that the victim's hands were ultimately untied is misguided because testimony supported that [Petitioner] at least attempted to tie her hands.

*Fox*, 2020 WL 2501687, at *5.

The court of appeals' analysis tracks applications of clearly established federal law. "[T]he government may not rely on prejudicial facts not in evidence when making its closing arguments."

26

*United States v. Roach*, 502 F.3d 425, 434 (6th Cir. 2007). Nonetheless, "[a] prosecutor has 'leeway to argue reasonable inferences from the evidence' during closing arguments." *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (quoting *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)).

Petitioner offers nothing to indicate that the court of appeals strayed from clearly established federal law in rejecting this claim. Petitioner merely continues to insist that the evidence did not support the determination that he tied the victim's hands. The testimony set forth above as identified and relied upon by the court of appeals supports the prosecutor's comments during opening statements and closing arguments. The appellate court's determinations regarding whether the victim was tied are presumed correct and Petitioner has failed to rebut the presumption with clear and convincing evidence to the contrary. Certainly, under the circumstances, Petitioner has not demonstrated that the prosecutor's comments "so infected the trial with unfairness" that he was denied due process. Petitioner, therefore, is not entitled to relief with respect to this portion of habeas ground III.

### 2. Statements Regarding Petitioner Not "Getting Hard"

Finally, Petitioner takes issue with statements made by the prosecutor during opening statements and closing arguments that referenced Petitioner not being able to obtain an erection on the night of the incident. During opening arguments, the prosecutor stated that the victim "will tell you that [Petitioner was] not actually hard" when he tried to penetrate her. (Trial Tr. II, ECF No. 6-4, PageID.679.) During closing arguments, the prosecutor stated: "The final crux of what made him angry was the fact that he couldn't get hard. That was the penetration to the vagina with his penis. And so, then, he had to masturbate himself and ejaculate on her face." (Trial Tr. III, ECF

No. 6-5, PageID.1049.) At no time, however, did the victim testify that Petitioner was not able to achieve an erection on the night in question.[4]

The court of appeals agreed with Petitioner that the prosecutor's comments were improper, but that they were not outcome-determinative. Specifically, the court of appeals stated:

> However, the prosecutor's comments about [Petitioner's] inability to get an erection was improper. "A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Unger*, 278 Mich. App. at 241. The record does not support any type of finding that [Petitioner] was unable to become erect during the assault. There was, however, evidence of penile and digital penetration of the victim by [Petitioner]. Therefore, the prosecutor's comments about [Petitioner] not being "actually hard" and [Petitioner] getting angry because "he couldn't get hard" were improper. However, reversal for a new trial is not required. [Petitioner] cannot establish plain error affecting his substantial rights as a result of the prosecutor's comments. We find that the comments about [Petitioner's] inability to get an erection were not outcome-determinative.

*Fox*, 2020 WL 2501687, at *5.

Although the court of appeals concluded that the prosecutor's comments were improper, Petitioner fails to show that the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). As noted *supra*, the court of appeals' decision that the prosecutor's comments about Petitioner's inability to get an erection were not outcome determinative is the equivalent of a determination that the error was harmless under *Brecht*. *Kyles*, 514 U.S. at 435–36. During trial, the victim testified that Petitioner digitally penetrated her and that she was trying to get him to stop, telling him "No, it's not like that" and "Don't." (Trial Tr. II, ECF No. 6-4, PageID.708.) The victim testified that she was crying while this was happening. (*Id.*) The victim also testified that

---

[4] The victim offered that testimony at the preliminary examination. (Prelim. Exam. Tr., ECF No. 6-2, PageID.467–468.) So it is certainly understandable that the prosecutor might have expected that testimony to be repeated at trial.

Petitioner penetrated her with his penis, and that she was asking "Why?" and stating "It hurts" while this was happening. (*Id.*, PageID.709.) The victim testified that she told Petitioner that it was not "enjoyable" and "fun." (*Id.*) She also indicated that she was struggling and trying to get away. (*Id.*) In light of that testimony, Petitioner fails to demonstrate that the prosecutor's comments had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

Given Petitioner's failure to persuade the Court that no fairminded jurist could reach the conclusion arrived at by the court of appeals, the Court will defer to the court of appeals' determination. The Court's deference to the court of appeals' determination that any error was not outcome determinative necessarily leads a conclusion that Petitioner has failed to demonstrate that the court of appeals' rejection of this claim of prosecutorial misconduct is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief with respect to habeas ground III.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Conclusion

The Court will enter a judgment denying the petition and an order denying a certificate of appealability.

Dated:    November 29, 2023                              /s/ Paul L. Maloney
                                                        Paul L. Maloney
                                                        United States District Judge

30